IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RESPIRONICS, INC. and RIC      )
INVESTMENTS, INC.              )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No.  04-0336
                               )
INVACARE CORP.                 )
          Defendant.           )

## MEMORANDUM and ORDER

Gary L. Lancaster,                              April 26, 2007
District Judge

This is an action in patent infringement. Plaintiffs, Respironics, Inc. and RIC Investments, Inc. ("Respironics") allege that defendant Invacare Corporation ("Invacare") has infringed several of its patents by making, using, selling, or offering to sell the Polaris EX CPAP with SoftX device. Defendant denies that its product infringes plaintiffs' patents. Defendant also contends that the asserted patents are invalid.

Before the court are cross motions for summary judgment on the issue of infringement [doc. nos. 253 and 254], and plaintiffs' motion for summary judgment on the issue of invalidity [doc. no. 255]. For the reasons that follow, we will enter summary judgment in defendant's favor as to infringement of the '802, '193, and '575 Patents.

We cannot enter summary judgment in either party's favor as to infringement of the '517 Patent because there is a key factual dispute regarding the $V_{scale}$ variable in the Unloading Equation.

We will enter summary judgment in plaintiffs' favor on each of defendant's invalidity contentions.

## I.   FACTUAL BACKGROUND

A detailed summary of the factual and technical background of this case can be found in this court's claim construction opinion [doc. no. 249].  We will include a short summary here for ease of reference.

Plaintiffs specialize in the development, manufacture and marketing of sleep therapy devices for the treatment of obstructive sleep apnea ("OSA").   These devices provide various types of treatment for OSA, including CPAP, bi-level, and exhalation unloading.   All OSA treatment devices blow air into a patient's throat, via a mask, during sleep in order to prevent airway collapse.   When the airway collapses during sleep, the patient awakes, resulting in disturbed sleep.   OSA can also lead to other long-term health problems.   Although OSA can be treated successfully, patients sometimes do not use their prescribed breathing device due to the discomfort caused by having to exhale against the stream of air being blown into their throat.   Therefore, modern OSA devices seek to increase patient comfort, and thereby encourage regular use of the devices, by minimizing this exhalation discomfort.

2

The accused device is the Polaris EX CPAP with SoftX.   Prior to operation, the device is programmed with a CPAP, or constant, pressure, which is determined by a medical professional.   Prior to operation, the patient may also select a SoftX setting.   SoftX refers to a feature that is designed to increase patient comfort during exhalation by minimizing the pressure spike in early exhalation.   The accused device has SoftX settings of 0 (or off), 1, 2, or 3.

Plaintiffs own numerous patents in the sleep therapy device field.   Two sets of patents are at issue in this case: the Early Patents and the Later Patents.   Reduced to their most basic form, the Early Patents cover bi-level treatments and the Later Patents cover exhalation unloading treatments.

Plaintiffs assert that defendant has infringed and continues to infringe claims 3 and 24 of United States Patent No. 5,148,802 ("the '802 Patent") and claims 9, 44, and 53 of United States Patent No. 5,433,193 ("the '193 Patent") [the Early Patents].   These are bi-level patents.   Under them, a computer determines, by measuring and comparing flow rates, even in the presence of leakage, when a patient is exhaling so that the device can switch to a pre-selected lower pressure magnitude during exhalation in order to increase patient comfort.   Respironics, Inc. v. AirSep Corp., No. 96-cv-2129, Opinion at 12-13 (W.D. Pa. Nov. 10, 1997).

3

Plaintiffs assert that defendant has infringed and continues to infringe claims 21, 23, 43, and 44 of United States Patent No. 6,105,575 ("the '575 Patent"). Plaintiffs also assert that defendant infringed claims 29, 30, and 32 of United States Patent No. 6,609,517 ("the '517 Patent") at a 2003 trade show. [The Later Patents]. These are exhalation unloading patents. Under them, the exhalation pressure is decreased at the beginning of exhalation, even below the decrease found in bi-level therapy, in order to increase patient comfort.

The asserted claims are reproduced in full at Appendix A.

## II.   LEGAL BACKGROUND

Summary judgment is appropriate in a patent case, as in all other cases, when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. Id. at 323-24. Therefore, summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The summary judgment inquiry asks whether there is a need for trial - "whether, in other words, there are any

4

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

## A. Infringement

### 1. Literal Infringement

Patent infringement analysis involves a two-step process: first, the claims are construed, as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present in the accused device. Markman v. Westview Instruments, Inc., 517 U.S. 370, 374 (1996); Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact as to whether the asserted claims read on the accused device, or where no reasonable jury could find that every limitation from an asserted claim is or is not found in the accused device. Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998); Lifescan, Inc. v. Home Diagnostics, Inc., 76 F.3d 358, 359 (Fed. Cir. 1996).

2.   Doctrine of Equivalents Infringement

Even if an accused device does not infringe literally, it may still be found to infringe under the doctrine of equivalents. Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). Infringement under the doctrine of equivalents occurs if the difference between the accused device and the claim limitation are "insubstantial," meaning that "the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316-17 (Fed. Cir. 1999) (citing Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608 (1950)).

As with any other legal theory, where there is no genuine issue of material fact regarding infringement under the doctrine of equivalents, summary judgment is appropriate. In particular, the Court of Appeals for the Federal Circuit has recently reiterated, in the summary judgment context, that a patent holder must provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device on a limitation-by-limitation basis. Network Commerce, Inc. v. Microsoft Corp., 422 F.3d 1353, (Fed. Cir. 2005) (citing cases). Generalized testimony as to the overall similarity between the claims and the accused device will not suffice. Id.

6

B. <u>Invalidity</u>

A patent is presumed valid. 35 U.S.C.A. § 282. To overcome
the presumption of validity the party challenging the patent must
prove invalidity by clear and convincing evidence. <u>Schumer v.
Lab. Computer Sys., Inc.</u>, 308 F.3d 1304, 1315 (Fed. Cir. 2002)
(citing cases); <u>U.S. Surgical Corp. v. Ethicon, Inc.</u>, 103 F.3d
1554, 1563 (Fed. Cir. 1997) (citing <u>Perkin-Elmer Corp. v.
Computervision Corp.</u>, 732 F.2d 888, 893 (Fed. Cir. 1984)). "When
evaluating a motion for summary judgment, the court views the
record evidence through the prism of the evidentiary standard of
proof that would pertain at a trial on the merits." <u>Univ. of
Rochester v. G.D. Searle & Co., Inc.</u>, 358 F.3d 916, 920 (Fed.
Cir. 2004) (quoting <u>Eli Lilly & Co. v. Barr Labs., Inc.</u>, 251 F.3d
955, 962 (Fed. Cir. 2001)); <u>see also</u> <u>Anderson</u>, 477 U.S. at 252-
55. "Accordingly, a party 'seeking to invalidate a patent at
summary judgment must submit such clear and convincing evidence
of invalidity.'" <u>Searle</u>, 358 F.3d at 920 (quoting <u>Barr</u>, 251 F.3d
at 962).

Plaintiffs have moved for summary judgment on defendant's
invalidity defenses and counterclaims. Plaintiffs may satisfy
their burden on summary judgment by showing that there is an
absence of evidence to support defendant's invalidity
contentions. <u>Celotex</u>, 477 U.S. at 322. Defendant may defeat
such a summary judgment motion only if it can come forward with

evidence sufficient to show, under the heightened burden of proof, that there is a genuine issue of material fact warranting a trial. Anderson, 477 U.S. at 250, 255.

### 1.  Best Mode Requirement

A patent's specification must set forth the best mode known to the inventor for practicing the invention claimed in the patent.  35 U.S.C.A. § 112.  The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims.  Teleflex, 299 F.3d at 1330-31 (citing cases).  The best mode requirement creates a statutory bargained-for exchange by which a patentee obtains the right to exclude others from practicing the claimed invention for a certain time period, and the public receives knowledge of the preferred embodiments for practicing the claimed invention.  Barr, 251 F.3d at 963.

Invalidation for failure to set forth the best mode requires proof by clear and convincing evidence: (1) that the inventor knew of a better mode than was disclosed, and (2) that the inventor concealed that better mode.  Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 927-28 (Fed. Cir. 1990).  The first question is subjective, focusing on the inventor's state of mind at the time he filed the patent application, and asks whether the inventor considered a particular mode of practicing the invention

8

to be superior to all other modes. Teleflex, 299 F.3d at 1330.
The second question is objective and asks whether the inventor
adequately disclosed the mode he considered to be superior so
that a person with ordinary skill in the art could practice it.
Id. This question depends upon both the scope of the claimed
invention and the level of skill in the relevant art. N. Telecom
Ltd., 215 F.3d at 1286.

The best mode requirement does not extend to production
details and routine matters. Teleflex, 299 F.3d at 1331-32. The
best mode requirement is also not violated by omission of
information that would be readily known to persons practicing in
the field of the invention. Id.; Ajinomoto Co., Inc. v.
Archer-Daniels-Midland Co., 228 F.3d 1338, 1346-47 (Fed. Cir.
2000); Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc.,
112 F.3d 1137, 1144-45 (Fed. Cir. 1997).

Compliance with the best mode requirement is a question of
fact, because it depends on the applicant's intent. Chemcast,
913 F.2d at 928; Spectra-Physics, Inc. v. Coherent, Inc., 827
F.2d 1524, 1535-36 (Fed. Cir. 1987). To grant summary judgment
on a factual question, all disputed material facts must be
resolved in favor of the non-movant, and consideration must be
given to the evidentiary standard of proof. Anderson, 477 U.S.
at 252-53. However, when the non-movant cannot prevail even
under its view of the facts, with doubts resolved in its favor,

9

or when the non-movant has not presented evidence on each element

on which it will bear the burden of proof at trial, the moving

party is entitled to judgment as a matter of law.  Id.; Searle,

358 F.3d at 920; Young Dental, 112 F.3d at 1141.

### 2.  Written Description/Enablement

The written description requirement derives from 35 U.S.C.A.

§ 112, which states:

> The specification shall contain a written
> description of the invention, and of the
> manner and process of making and using it, in
> such full, clear, concise, and exact terms as
> to enable any person skilled in the art to
> which it pertains, or with which it is most
> nearly connected, to make and use the same.

The enablement requirement is satisfied if the patent

specification teaches those skilled in the art how to make and use

the full scope of the claimed invention without undue

experimentation.  Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d

1361, 1365 (Fed. Cir. 1997) (citing cases).  That some

experimentation is required to practice the claimed invention is

permissible, so long as it is not undue.  Atlas Powder Co. v. E.I.

du Pont De Nemours & Co., 750 F.2d 1569, 1576 (Fed. Cir. 1984).

The issue is determined as of the filing date of the patent

application.  Hybritech Inc. v. Monoclonal Antibodies, Inc., 802

F.2d 1367, 1384 (Fed. Cir. 1986).  The burden of proof is on the

accused infringer to present clear and convincing evidence that

the asserted patent claims are invalid under § 112. <u>United States</u>
<u>v. Telectronics, Inc.</u>, 857 F.2d 778, 785 (Fed. Cir. 1988).
Whether a claim is enabled is a question of law, based on
underlying facts. <u>See</u> <u>Enzo Biochem, Inc. v. Calgene, Inc.</u>, 188
F.3d 1362, 1369-70 (Fed. Cir. 1999).

### 3.   <u>Anticipation</u>

Invalidity by anticipation requires that the four corners of
a single prior art reference describe every element of the claimed
invention, either expressly or inherently, such that a person of
ordinary skill in the art could practice the invention without
undue experimentation. <u>Advanced Display Sys., Inc. v. Kent State</u>
<u>Univ.</u>, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citing cases).
"[T]he dispositive question regarding anticipation [i]s whether
one skilled in the art would reasonably understand or infer from
the [prior art reference's] teaching" that every claim element was
disclosed in that single reference. <u>In re Baxter Travenol Labs.</u>,
952 F.2d 388, 390 (Fed. Cir. 1991). "There must be no difference
between the claimed invention and the reference disclosure, as
viewed by a person of ordinary skill in the field of the
invention." <u>Scripps Clinic and Research Found. v. Genentech,</u>
<u>Inc.</u>, 927 F.2d 1565, 1576 (Fed. Cir. 1991).

Anticipation is a question of fact. <u>Minn. Mining & Mfg. Co.</u>
<u>v. Chemque, Inc.</u>, 303 F.3d 1294, 1301 (Fed. Cir. 2002). To make

11

such a finding on summary judgment, the court must determine that
no facts material to the question are disputed; or that even if
all factual inferences are drawn in favor of the non-movant, there
is no reasonable basis on which the non-movant can prevail.
Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984). The
standard of proof that would have to be met at trial must be
considered, and the party bearing the burden of proof at trial
must present sufficient evidence on each element of a defense in
order to avoid summary judgment. Celotex, 477 U.S. at 322;
Anderson, 477 U.S. at 257. Where a reference was previously
considered by the U.S. Patent and Trademark Office during
prosecution of the asserted patents, a defendant must meet a more
heightened burden of proof. Bausch & Lomb, Inc. v. Barnes-
Hind/Hydrocurve, Inc., 796 F.2d 443, 447 (Fed. Cir. 1986).

## 4. Inventorship

Section 116 of the Patent Act states that joint inventors
shall apply for a patent together. 35 U.S.C.A. § 116. "A patent
is invalid if more or fewer than the true inventors are named."
Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352,
1381 (Fed. Cir. 2004). However, "[b]ecause a patent is presumed
valid under 35 U.S.C. § 282, there follows a presumption that the
named inventors on a patent are the true and only inventors,"
which presumption must be overcome with clear and convincing

12

evidence. Id. at 1381-82.

The determination of whether a person is a joint inventor is fact specific, and no bright-line standard will suffice in every case. Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997). However, because conception is the touchstone of inventorship, each joint inventor must generally contribute to the conception of the invention.[1] Conception is complete when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. Stern v. Trustees of Columbia Univ., 434 F.3d 1375, 1378 (Fed. Cir. 2006).

III. DISCUSSION

   A.    Infringement

          1.    The Early Patents

   Plaintiffs claim that defendant infringes claims 3 and 24 of the '802 Patent and claims 9, 44, and 53 of the '193 Patent. Each of these claims require that breathing gas be provided to a patient "at selected higher and lower pressure magnitudes." There is no genuine dispute that the accused device does not provide breathing gas to the patient at two pre-selected pressures. As

---

[1] Because co-inventors need not contribute to the subject matter of every claim of the patent, inventorship is determined on a claim-by-claim basis. Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

13

such, no reasonable jury could conclude that defendant infringes the asserted claims of the '802 Patent or the '193 Patent.

There is much that is not, and cannot be, in dispute regarding infringement of the Early Patents. Both parties agree that summary judgment rests on whether the accused device provides "higher and lower pressure magnitudes." Both parties also agree that the accused device uses the Unloading Equation to determine how breathing gas will be delivered to a patient. Both parties agree that the Unloading Equation is expressed as Unload Pressure = $P_{set}$ - $[P_{set} * ((\Delta V * V_{scale})/K) * S]$.

Finally, the court has already construed the phrase "at selected higher and lower pressure magnitudes" to mean "at a higher pressure magnitude and a lower pressure magnitude that have been chosen prior to operation of the computer circuitry that is used to determine whether the patient is inhaling or exhaling" and the parties cannot dispute that construction at this point in the proceedings.

Even so, plaintiffs still contend that the accused device reads on the "at selected higher and lower pressure magnitudes" claim element. Plaintiffs contend that the two pressure magnitudes programmed into the accused device before operation are the prescribed CPAP pressure and the SoftX setting. However, plaintiffs' contention is not supported by the facts, and, at times, their own arguments.

14

For instance, although plaintiffs initially argue that the SoftX setting is the second pressure magnitude, they later acknowledge, as they must, that SoftX is but one factor in the Unloading Equation, represented by the variable "S". Plaintiffs cannot, and do not, dispute that the SoftX setting is a constant value plugged into the Unloading Equation, which equation is then used, during operation of the accused device, to arrive at the second pressure to be applied. No reasonable jury could conclude that the SoftX setting of 1, 2, or 3 is a second, pre-selected pressure magnitude.

Plaintiffs go on to argue that while the SoftX setting itself may not be a second, pre-programmed pressure magnitude, because the setting directly results in a constant second pressure magnitude being applied to the patient airway, the accused device infringes. According to plaintiffs, once the SoftX setting is selected, the second pressure magnitude does not change during operation of the device. Although a somewhat convincing argument on its face, the facts, once examined, do not support it. The second pressure magnitude applied by the accused device can, and does, change on a breath by breath basis, and as a direct result of a patient's prior breathing patterns. This is demonstrated in two ways: first, because the Unloading Equation includes a variable accounting for changes caused by previous breaths; and second, because, in operation, this variable does cause the second

15

pressure magnitude to change.

The Unloading Equation - ΔV Variable: The "delta V" (ΔV)
factor in the Unloading Equation means "change in valve position."
There can be no real dispute that the concept of "change" is
represented in mathematical or scientific equations by the delta
symbol, and that the "V" symbol in the Unloading Equation refers
to valve positions. Nevertheless, plaintiffs attempt to avoid
this reality by labeling the ΔV factor as being "related to the
historical position of the valve inside the SoftX device." Even
under such a strained interpretation plaintiffs still acknowledge,
as they must, that the ΔV factor accounts for change. The
position of the valve is "historical" because it is based on the
valve positions that have occurred in the past. Therefore, there
is no genuine dispute that the second pressure magnitude, the
Unloading Pressure, is based on a variable that accounts for
changes caused by the patient's breathing pattern.

Even Dr. Younes, plaintiffs' expert, acknowledges this by
stating that "...the magnitude of unloading is a function of the
[SoftX] setting...and *peak inspiratory flow of the preceding
inspiration (patient-determined quantity)*." [doc. no. 258, p. A116
(emphasis added)]. This belies any notion that the accused device
supplies two pre-programmed, and constant, pressure magnitudes to
the patient.

16

Evidence of Operation of the Device: However, plaintiffs contend that even though the Unloading Equation includes a factor that accounts for change, the second pressure magnitude never changes in practice. According to plaintiffs, regardless of the value of the $\Delta V$ variable, the second pressure magnitude remains the same as that supplied to the patient on the first breath, unless the patient stops the machine and changes the SoftX setting. As such, according to plaintiffs, the accused device supplies the required pre-selected higher and lower pressure magnitudes. In support of this facially convincing argument, plaintiffs cite to the declaration of Mr. Mascara.

However, Mr. Mascara does not prove in his declaration that the second pressure magnitude does not change regardless of the $\Delta V$ value. Rather, he proves the opposite. This is not entirely surprising given that Mr. Mascara's goal in assembling the data attached to his declaration was not to prove that the second pressure was constant. Instead, he was trying to prove, and did prove, that the second pressure was always lower than the prescribed CPAP pressure, a matter in dispute prior to the court's claim construction ruling. He was not trying to prove, and did not prove, that the second pressure is always constant, regardless of the $\Delta V$ variable value.

17

In summary, the undisputed facts establish the following: The accused device uses one pre-selected pressure magnitude, that being the prescribed CPAP pressure. It also uses a pre-selected SoftX setting, which is not a pressure magnitude, but is instead a value applied to other variables in the Unloading Equation, which is used to determine the second pressure magnitude that will be supplied to a patient. One of the variables in the Unloading Equation is $\Delta V$, which reflects the change in valve position over the previous breath. This $\Delta V$ factor can, and does, cause the second pressure magnitude to fluctuate on a breath by breath basis in the accused device. Therefore, the accused device does not provide breathing gas to the patient at two pre-selected pressure magnitudes.

Based on these undisputed facts, no reasonable jury could conclude that the accused device provides breathing gas "at a higher pressure magnitude and a lower pressure magnitude that have been chosen prior to operation of the computer circuitry that is used to determine whether the patient is inhaling or exhaling." As such, summary judgment that defendant does not infringe claims

18

3 and 24 of the '802 Patent or claims 9, 44, and 53 of the '193 Patent will be entered.[2]

### 2.  The Later Patents

#### (a)  The '575 Patent

Plaintiffs claim that defendant infringes claims 21, 23, 43, and 44 of the '575 Patent.

#### (I)  Claims 21, 43, and 44

Claims 21, 43, and 44 each require that "a shape of said predetermined pressure profile is set independent of any monitored respiratory characteristics of such a patient." We have previously construed the above phrase to mean that "...the magnitude and duration of the predetermined pressure profile are set without consideration of any monitored breathing characteristics of such a patient." The claim construction is not

---

[2] Plaintiffs have presented no evidence, or argument, in response to defendant's position that this claim element cannot be established under the doctrine of equivalents. Nor, we note, did plaintiffs include any argument on the doctrine of equivalents in their motion for summary judgment of infringement, from which we could extrapolate such evidence. Having not responded on this issue, or presented any evidence to contradict defendant, we find that plaintiffs cannot sustain their burden to overcome summary judgment under this alternative theory. Regardless, we have independently found no evidence that could support an argument that this claim element is infringed under the doctrine of equivalents.

19

open for dispute at this point in the case.[3]

For the same reasons as those discussed above, there can be no genuine dispute that the magnitude of the second pressure delivered by the accused device is based on the patient's previous breath. As such, no reasonable jury could conclude that defendant infringes claims 21, 43, or 44 of the '575 Patent. The accused device determines the second pressure magnitude by using the Unloading Equation. As discussed in detail above, it is undisputed that the Unloading Equation includes among its variables, $\Delta V$. It is undisputed that $\Delta V$ is based on a change in the valve position from the previous breath. As such, it cannot be disputed that the magnitude of the pressure profile delivered by the accused device is based on, and, thus, not independent of, the monitored breathing of the patient.

Plaintiffs contend that defendant is foreclosed from taking this position because defendant has previously admitted that a valve position is not a physiological or breathing characteristic of a patient. Plaintiffs' argument amounts to nothing more than verbal gamesmanship. No one would dispute that a valve is a piece of machinery, and not a breathing characteristic. However, the

---

[3] Plaintiffs attempt to resurrect their claim construction argument that the shape of the pressure profile is comprised of more than its magnitude and duration. The court has already concluded that, in the context of these Patents, the shape of the pressure profile is comprised of its magnitude and its duration.

position of the valve changes because of a breathing characteristic. In other words, the valve moves as a result of the patient's breath. Therefore, ΔV, and, in turn, the Unloading Equation which arrives at the appropriate second pressure to supply to the patient, is based on a monitored breathing characteristic of a patient.

As such, no reasonable jury could conclude that the magnitude and duration of the predetermined pressure profile are set without consideration of any monitored breathing characteristics of a patient, as required by the patent. Therefore, we will enter summary judgment that defendant does not infringe claims 21, 43, or 44 of the '575 Patent.[4]

### (ii) The '575 Patent - Claim 23

Plaintiffs also claim that defendant infringes claim 23 of the '575 Patent. Claim 23 requires that breathing gas be delivered to a patient at a "minimally sufficient pressure... to

---

[4] Again, plaintiffs have presented no evidence, or argument, in response to defendant's position that this claim element cannot be established under the doctrine of equivalents. Nor, we note, did plaintiffs include any argument on the doctrine of equivalents in their motion for summary judgment of infringement, from which we could extrapolate such evidence. Having not responded on this issue, or presented any evidence to contradict defendant, we find that plaintiffs cannot sustain their burden to overcome summary judgment under this theory. Regardless, we have independently found no evidence to support an argument that this claim element is infringed under the doctrine of equivalents.

21

prevent airway collapse, wherein said minimally sufficient
pressure is a summation of a pressure needed to prevent airway
collapse and pressure needed to overcome respiratory effort." We
have previously construed the phrase minimally sufficient pressure
to mean "A summation of the pressure necessary to prevent airway
collapse in the absence of respiratory efforts (collapse due to
airway structure, muscle tone, and body position) and the pressure
necessary to overcome the collapsing and splinting effects of
respiratory efforts."

Plaintiffs rely on only one piece of evidence to support
their conclusion that the accused device performs this key
function - what amounts to one page of Dr. Younes's expert report.
That portion of Dr. Younes's report discusses the general purpose
and characteristics of CPAP sleep therapy devices and then recites
that the accused device performs the required function, and,
therefore, infringes.

We conclude that this falls short of the mark on summary
judgment. Dr. Younes does not discuss the accused device at all
before he summarily concludes that the claim element is met by it.
It is well settled that an expert's unsupported conclusion on the
ultimate issue of infringement is insufficient to raise a genuine
issue of material fact, and that a party may not avoid that rule
simply by framing the expert's conclusion as an assertion that a
particular critical claim limitation is found in the accused

22

device. Arthur A. Collins, Inc. v. N. Telecom Ltd., 216 F.3d 1042, 1046 (Fed. Cir. 2000) (citing Zelinski, 185 F.3d at 1317 and Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 876 (Fed. Cir. 1998)). Based on the one piece of evidence presented by plaintiffs, no reasonable jury could conclude that the accused device contains the claim element required by the patent. Thus, we will enter summary judgment of non-infringement of claim 23 of the '575 Patent.[5]

### (b) The '517 Patent

Plaintiffs allege that defendant infringed claims 29, 30, and 32 of the '517 Patent by displaying a device at a 2003 trade show. Plaintiffs do not contend that the currently commercialized Polaris EX CPAP with SoftX infringes this patent.

We cannot enter summary judgment as to infringement of this patent because there is one key factual dispute; namely, whether the $V_{scale}$ variable in the Unloading Equation converts the valve position information into a signal equal to the volume of breathing gas moving per unit of time. If it does, then defendant's trade show device infringed this patent. If it does

---

[5] Again, plaintiffs have presented no evidence in support of a doctrine of equivalents theory of infringement of this claim. As such, we find that plaintiffs cannot sustain their burden to overcome summary judgment under this alternative theory. Regardless, we have independently found no evidence that could support an argument that this claim element is infringed under the doctrine of equivalents.

23

not, then defendant's trade show device did not infringe this
patent.

Resolution of this factual dispute is dispositive of the
infringement question because all of the asserted claims[6] of the
'517 Patent require "...sensing a [flow rate][7] ...and outputting a
signal corresponding to the [flow rate]..."  Put simply, the
asserted claims of the '517 Patent all require that an accused
device create a signal equal to the volume of breathing gas moving
per unit of time in order to infringe.  However, Dr. Younes,
plaintiffs' expert, acknowledges that the valve position
information collected by the accused device is not expressed in
flow rate units.  [doc. no. 258, p. A120].  While plaintiffs
characterize valve positions as simply "un-calibrated flow
information," or a proxy for flow rates [doc. no. 258, p. A110],
plaintiffs' expert admits that valve position information must be
converted into actual flow rate units in order to be used in the
Unloading Equation to determine the second pressure magnitude
[doc. no. 258, p. A120].

Contrary to these undisputed and admitted facts, plaintiffs

---

[6] Claims 30 and 32 depend from claim 29.  Therefore, because
claim 29 requires that the flow rate be sensed and a flow rate
signal be outputted, all three claims require that the flow rate
be sensed and a flow rate signal be outputted.  Robotic Vision
Systems, Inc. v. View Eng'g, Inc., 189 F.3d 1370, 1376 (Fed. Cir.
1999).

[7] We have previously defined flow rate to mean "the volume
of breathing gas moving per unit of time."

24

contend that flow rates need not be measured by, or even known to, the accused device as long as some measurement proportional to, related to, similar to, or capable of being manipulated to match the flow rate is made. Thus, plaintiffs contend that the accused device literally infringes, even if a signal equal to the flow rate is never created. We disagree.

The claims of the '517 Patent require that the flow rate be "sensed" and that a signal equal to the flow rate be "outputted". Plaintiffs argue that valve positions substitute for flow rates in the accused device, even though valve positions do not measure the volume of breathing gas moving per unit of time. It would appear illogical that a device could perceive and create a signal equal to the volume of breathing gas moving per unit of time without recognizing, accounting for, knowing, or measuring the volume of breathing gas moving per unit of time. However, we need not resolve this logical, or linguistic, conundrum because the evidence in this case reveals that there is no actual dispute that in order for the accused device to function valve position measurements must be converted into flow rates. Plaintiffs' own expert explains this requirement. [doc. no. 258, p. A120].

Although this conversion requirement cannot be genuinely disputed, there is still a key factual dispute precluding entry of summary judgment on this issue. Plaintiffs have produced evidence indicating that flow rate conversion is accomplished through use

25

of the $V_{scale}$ variable in the Unloading Equation. Defendant has produced evidence indicating that the $V_{scale}$ variable is not intended to, and does not, convert valve position information into flow rate signals. This is a matter that must be submitted to a fact finder for resolution.

To the extent that plaintiffs' real argument is that valve position measurements themselves infringe the '517 Patent under the doctrine of equivalents, we find, as a matter of law, that this legal theory is unavailable to plaintiffs. Plaintiffs have presented no evidence that the '517 Patent is infringed under the doctrine of equivalents. Their opening expert reports provide no analysis under the doctrine. Their rebuttal expert reports either make a passing reference to the legal requirements under the doctrine, or disclaim that it applies at all.

As the Court of Appeals for the Federal Circuit has stated: "The doctrine of equivalents is not a talisman that entitles a patentee to a jury trial on the basis of suspicion; it is a limited remedy available in special circumstances, the evidence for which is the responsibility of the proponent." Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1210 (Fed. Cir. 2001). Where an expert opines that there is infringement under the doctrine of equivalents because there is literal infringement, or follows his literal infringement analysis with a conclusory statement that there is also infringement under the doctrine of

26

equivalents, the remedy is not available.  Zelinski, 185 F.3d at
1317.

Therefore, plaintiffs can only succeed in proving
infringement of the '517 Patent under a literal infringement
theory.  In order to do so, plaintiffs must establish that the
accused device converts its valve position measurements into a
signal equal to the volume of breathing gas moving per unit of
time.  Because the parties have presented conflicting evidence on
whether this conversion takes place, we cannot enter summary
judgment in either party's favor on infringement of this patent.[8]

B.   Invalidity

Defendant has attacked the validity of plaintiffs' patents.
Defendant contends that all of the asserted claims of the Early
and Later Patents are invalid for failure to comply with the best
mode requirement.  Defendant also argues that the asserted claims
of the '193, '575, and '517 patents are invalid for failure to
comply with the written description/enablement requirement.
Defendant further contends that the Later Patents are invalid as

---

[8] Although the parties have not yet engaged in damages
discovery, we note that even were infringement found at trial,
plaintiffs' damages would presumably be limited given that the
device accused of infringing the '517 Patent was, to the best of
our knowledge, displayed at only one trade show and was never
actually sold in the United States.  See Knorr-Bremse Systeme
Fuer Nutzfahrzeuge GMBH v. Dana Corp., 133 F.Supp.2d 833, 842
(E.D. Va. 2001).

27

anticipated and because the incorrect inventors are listed.

Plaintiffs have filed a motion for summary judgment contending that defendant has not presented clear and convincing evidence that the asserted patents are invalid under any theory. Defendant argues that summary judgment is inappropriate because it need not produce clear and convincing evidence of invalidity at the summary judgment stage. According to defendant, because it has produced some evidence of invalidity, the matter must proceed to trial.

We address each of defendant's invalidity contentions separately below. In considering each challenge to the asserted patents, we keep in mind that a patent is presumptively valid, which presumption can only be overcome with clear and convincing evidence. 35 U.S.C.A. § 282; Schumer, 308 F.3d at 1315. In order to prove that there is a genuine issue of material fact warranting a trial, defendant must come forward with such evidence on each of its defenses and counterclaims. Anderson, 477 U.S. at 250, 255; Searle, 358 F.3d at 920. Because defendant has failed to meet that burden, we enter summary judgment in plaintiffs' favor on each of the invalidity defenses and counterclaims.

1.    Best Mode

        (a)    The Early Patents[9]

Defendant claims that claims 3 and 24 of the '802 Patent and claims 9, 44, and 53 of the '193 Patent are invalid for failure to disclose the best mode. Specifically, defendant contends that plaintiffs omitted detailed circuit diagrams from the patents. Plaintiffs contend that such diagrams amount to no more than production details and routine matters, exempted from the best mode requirement.

In order to succeed on its best mode theory, defendant has the burden of proving two things: first, that the inventor knew of a better mode than was disclosed; and second, that the inventor concealed that better mode. Chemcast, 913 F.2d at 927-28. Defendant's best mode case fails as a matter of law because defendant cannot meet these requirements.

Defendant has failed to come forth with any evidence showing that any inventor possessed a better way of practicing the invention. The most defendant has gathered is testimony from one of the inventors that he continually "tweaked" the circuitry.

_____

[9] Although we have found that defendant has not infringed either of the Early Patents, because defendant has asserted invalidity as both an affirmative defense, and a counterclaim, the court has discretion to determine whether to rule on the matter, even in the absence of infringement. Nystrom v. TREX Co., 1347 F.3d 1351 (Fed. Cir. 2003). Given that the issues have been fully briefed, and that these two companies will presumably continue to compete in this market, we have exercised our discretion to decide invalidity at this juncture.

29

That evidence does not prove that the inventor considered one way of practicing the invention better than another, or that the inventor preferred one implementation over another. Nor has defendant come forth with any evidence of concealment. Because defendant has no evidence that the inventors had a subjective belief as to a best mode of practicing the invention, and decided to conceal it, we will enter summary judgment on this defense and counterclaim in plaintiffs' favor.

Moreover, even were we to consider defendant's evidence sufficient on these elements, we find that the details of such circuitry amount to no more than production details and routine matters, to which the best mode requirement does not apply. Teleflex, 299 F.3d at 1331-32. Defendant cannot seriously dispute that circuitry was a subject matter well known in the relevant art. Because failure to include details regarding circuitry does not qualify as a best mode violation, we would enter summary judgment as to this defense and counterclaim in plaintiffs' favor on this alternative ground as well.

### (b) The Later Patents

Defendant alleges that claim 23 of the '575 Patent and claim 29 of the '517 Patent are invalid for failure to disclose the best mode. Specifically, defendant contends that plaintiffs omitted detailed electrical schematics of several working prototypes,

30

detailed logic flow charts, and control software information, as well as the use of a variable speed motor.  Plaintiffs contend that such evidence cannot sustain a best mode challenge.

For similar reasons as we have concluded that the best mode defense fails as to the Early Patents, we similarly find that the defense fails here.  The evidence to which defendant cites does not prove that the inventors preferred one particular mode over another.  There is no evidence of active concealment.

Moreover, one inventor actually testified that he considered details such as software, electrical schematics, and flow charts to be routine matters.  In addition, such details were known in the relevant art.  Defendant cannot establish its defense simply because prototypes used particular features.  Mentor H/S, Inc. v. Medical Device Alliance, Inc., 244 F.3d 1365, 1375 (Fed. Cir. 2001) (citing Wahl Instruments, Inc. v. Acvious Inc., 950 F.2d 1575, 1579 (Fed. Cir. 1991)).

Because defendant has no evidence that the inventors had a subjective belief as to a best mode of practicing the inventions, and decided to conceal it, and because the alleged concealed information amounts to no more than routine matters and details known in the relevant art, we will enter summary judgment on this defense and counterclaim in plaintiffs' favor.

31

2. Written Description/Enablement

(a) The Early Patents

Defendant contends that claims 9, 44, and 53 of the '193 Patent are invalid due to a failure to provide an adequate written description or enabling disclosure. In particular, defendant contends that the '193 Patent fails to provide an example in the written description of using only the reference indicia to select one of the higher and lower pressure magnitudes. Plaintiffs counter that the patent provides an adequate disclosure.

We find that, under the applicable law, defendant cannot prove its written description/enablement case as to these claims. The Court of Appeals for the Federal Circuit has held, "[a] specification may, within the meaning of 35 U.S.C. § 112 para. 1, contain a written description of a broadly claimed invention without describing all species that [the] claim encompasses." Cordis Corp. v. Medtronic AVE, Inc., 339 F.3d 1352, 1365 (Fed. Cir. 2003); see also Bilstad v. Wakalopulos, 386 F.3d 1116, 1124 (Fed. Cir. 2004). Under this standard, the '193 Patent contains an appropriate written description/enablement of the invention.

Because defendant cannot prove this defense or counterclaim under the applicable law, we will enter summary judgment in plaintiffs' favor.

32

## (b)   The Later Patents

Defendant asserts that claim 23 of the '575 Patent and claim 29 of the '517 Patent are invalid because there is no support in the written description for the claim element "at any given moment during at least a portion of a breathing cycle [or an expiratory cycle]." Plaintiffs argue that the patent's disclosure of controlling the pressure during an entire expiratory breathing cycle meets the above claim element. We agree. Control of at least a portion of an expiratory breathing cycle would be subsumed in control of the entire expiratory breathing cycle. We find defendant's argument to the contrary to be unsupported by either fact or law. As such, we will enter summary judgment in plaintiffs' favor on this defense and counterclaim as well.

## 3.   Anticipation

Defendant contends that claims 21, 23, and 43 of the '575 Patent, and claims 29, 30, and 32 of the '517 Patent are anticipated by three different references - a Younes Patent, a Younes Article, and the '802 Patent. Each of these references were considered by the U.S. Patent and Trademark Office during prosecution of the asserted patents, raising defendant's burden of proof even above the presumption of validity enjoyed by all patents. Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 447 (Fed. Cir. 1986). In addition, plaintiffs claim

33

that there are differences between the claims and each of the references, making anticipation impossible under the applicable law.

Defendant may defeat summary judgment by coming forward with evidence sufficient to show, under the twice-heightened burden of proof, that there is a genuine issue of material fact warranting a trial. Anderson, 477 U.S. at 250, 255. As will be discussed in the context of each claim below, we find that none of defendant's anticipation contentions can survive summary judgment.

### (a) The '575 Patent

#### i. Claims 21 and 43

Defendant contends that these claims are anticipated by (1) the Younes Patent; (2) the Younes Article; and (3) the '802 Patent. We address these claims together because both contain the claim element of a "predetermined pressure profile," which we find to preclude anticipation by both the Younes Patent and the '802 Patent. We found in our claim construction ruling that the predetermined pressure profile reduces the constant pressure of CPAP or the reduced EPAP pressure of bi-level therapy once the device detects the expiratory breathing phase. Defendant's argument that the '802 Patent and the Younes Patent anticipate these claims is based on its contention that a predetermined pressure profile could be defined as any constant pressure, such

34

as CPAP, EPAP, PEEP, or IPAP. However, our prior definition of
the term predetermined pressure profile forecloses defendant's
argument. Therefore, the '802 Patent and the Younes Patent, which
disclose CPAP or bi-level pressures cannot anticipate these
"predetermined pressure profile" claims.

The Younes Article is not so limited in the type of pressure
supplied on expiration, and therefore, anticipation by this
reference cannot be determined on this basis. Although defendant
has supported its anticipation position with some evidence, we
find that it has not presented a sufficient quantum of proof to
overcome summary judgment.

Defendant's burden of proof at trial will be to prove
anticipation by clear and convincing evidence, while also
overcoming the presumption that attaches to references already
considered by the Patent Office. When viewed through this burden
of proof prism, we cannot find an appropriate quantum of proof on
this issue to have been provided. In fact, defendant itself does
not claim that it has provided clear and convincing evidence,
arguing instead, that such a quantum of proof is not required at
the summary judgment stage. However, we must consider the high
burden of proof to which defendant will be held at trial, and
determine whether a reasonable fact finder could rule in
defendant's favor under that standard. Anderson, 477 U.S. at 252-
55; Searle, 358 F.3d at 920. We conclude that no reasonable jury

35

could rule in defendant's favor on this issue, and, therefore, will enter summary judgment in plaintiffs' favor on this defense and counterclaim.

### ii. Claim 23

Defendant contends that this claim is anticipated by (1) the Younes Patent. We find, as we did above, that defendant has not come forth with a sufficient quantum of proof to avoid summary judgment. In response to plaintiffs' motion for summary judgment on this issue, defendant cites to "Invacare's Contentions," which include claims charts explaining defendant's theory of anticipation of this claim. In turn, those charts refer to an expert report of Mr. Orth.

Defendant directs the court to Exhibit A of defendant's opposition brief for a copy of Mr. Orth's report. However, the court cannot find a copy of Mr. Orth's report at Exhibit A, or at any other exhibit attached to the opposition brief [doc. no. 266]. As such, we cannot evaluate the value of Mr. Orth's opinion to a reasonable juror. We can assume only that the report recites the text included in the claims charts.

No reasonable jury could rule in defendant's favor on this defense and counterclaim, under the appropriate standard of proof, when considering the evidence presented to this court in response to the summary judgment motion. Therefore, we will enter summary

36

judgment in plaintiffs' favor.

### (b) The '517 Patent

Defendant contends that claims 29, 30, and 32 of the '517 Patent are anticipated by the Younes Article. Plaintiffs contend that there are differences between the Younes Article and the claimed inventions. They support their contention with the expert report and declaration of Dr. Magdy Younes. Defendant disputes plaintiffs' statement of facts, yet refers to no evidence to support its position. Rather, defendant counters plaintiffs' presentation of evidence with legal argument, reference to the text of the Later Patents, and arguments made by plaintiffs during the claim construction process.

Viewed through the appropriate burden of proof, and with the additional burden that will attach because the reference was considered during the prosecution of this patent, we find that defendant has not provided sufficient evidence to defeat plaintiffs' motion for summary judgment. Defendant would most likely agree with our conclusion given its belief that it need not present clear and convincing evidence at the summary judgment stage. While defendant need not prove its entire case on summary judgment, we must, nevertheless, view the issue through the prism of the appropriate burden of proof. No reasonable juror could find that claims 29, 30, and 32 of the '517 Patent are anticipated

37

by the Younes Article based on the evidence defendant has
presented to the court. Summary judgment will be entered in
plaintiffs' favor on this defense and counterclaim.


          4.  Inventorship

     Defendant contends the asserted claims of both the '575
Patent and the '517 Patent are invalid because those patents fail
to name the proper inventors. Defendant argues both that a listed
inventor was improperly included (Mechlenburg) and that a true
inventor was omitted (Zdrojkowski). We summarily dispose of
defendant's argument that Mechlenburg was improperly included.
Defendant has absolutely no evidence to that effect. Failure to
be able to articulate each specific contribution to an invention
many years after the fact does not translate into proof that the
individual lied when he signed an oath attesting to the fact that
he was an inventor when the patent application was filed. No
witness has ever stated that Mechlenburg should not have been
listed as an inventor, and we find no other evidence in support of
this conclusion.

     Similarly, we find that defendant has failed to come forth
with sufficient evidence proving that Zdrojkowski was improperly
excluded. The lab notebook and deposition transcript page to
which defendant cites do not prove that Zdrojkowski was an
improperly omitted inventor. Nor does his testimony regarding his

                               38

work or his laboratory notebook prove that he was the individual responsible for conception of any invention appearing in the claims of the '575 Patent or the '517 Patent.  Defendant's evidence falls short of the mark and there is no justification for proceeding to trial on this issue.

We will enter summary judgment in plaintiff's favor on this defense and counterclaim.

## IV.   CONCLUSION

Because there is no factual dispute regarding infringement of the '802, '193, or '575 Patents, we will enter summary judgment in defendant's favor on these patents.  Because there is a factual dispute as to whether the $V_{scale}$ factor in the Unloading Equation converts the valve position measurements into flow rate signals, we cannot enter summary judgment as to literal infringement of the '517 patent.  We have, however, found that it is appropriate to enter judgment as a matter of law in defendant's favor as to whether plaintiffs may rely on the doctrine of equivalents for a finding of infringement of this patent.

We will enter summary judgment in plaintiffs' favor on all claims of patent invalidity.

An appropriate order follows.

39

**APPENDIX A**

The '802 Patent:

Claim 3:

    A method of medical treatment for a patient comprising the
    steps of:
        providing a flow of breathing gas from a source for
            delivery to the airway of such a patient at selected
            higher and lower pressure magnitudes at least as great
            as ambient atmospheric pressure;
        continually detecting the instantaneous flow rate of said
            breathing gas flowing between said source and the
            airway of such a patient;
        continually processing selected parameters including said
            instantaneous flow rate to provide a reference indicia
            corresponding to an average flow rate of breathing gas
            flowing between said source and said patient; and
        utilizing said instantaneous flow rate and said reference
            indicia to select
        one of said higher and said lower pressure magnitudes for
            said flow of breathing gas to be applied in the
        airway of such a patient.

Claim 24:

    A method of treating sleep apnea comprising the steps of:
        providing a flow of breathing gas from a source for
            delivery to the airway of a patient at selected higher
            and lower pressure magnitudes at least as great as
            ambient atmospheric pressure;
        continually detecting the instantaneous flow rate of said
            breathing gas flowing between said source and the
            airway of a patient;
        continually processing selected parameters including said
            instantaneous flow rate to provide a reference indicia
            corresponding to an average flow rate of breathing gas
            flowing between said source and said patient; and
        utilizing said instantaneous flow rate and said reference
            indicia to select
        one of said higher and said lower pressure magnitudes for
            said flow of breathing gas.

The '193 Patent:

Claim 9:

A method of medical treatment for a patient comprising the
steps of:
    providing a flow of breathing gas from a source for
        delivery to the airway of such a patient at selected
        higher and lower pressure magnitudes at least as great
        as ambient atmospheric pressure and permitting said flow
        of gas to pass from the patient;
    monitoring said flow to detect an instantaneous flow rate
        of such breathing gas;
    processing selected parameters including said
        instantaneous flow rate to provide a reference indicia
        corresponding to an average flow rate of such breathing
        gas; and
    utilizing at least one of said instantaneous flow rate and
        said reference indicia to select one of said higher and
        said lower pressure magnitudes to be applied in the
        airway of such a patient.

Claim 44:

A method of treating sleep apnea syndrome comprising the steps
of:
    providing a flow of breathing gas from a source for
        delivery to the airway of a patient at selected higher
        and lower pressure magnitudes at least as great as
        ambient atmospheric pressure;
    permitting said flow of breathing gas to pass from such a
        patient;
    monitoring said flow of breathing gas to detect an
        instantaneous flow rate of said breathing gas;
    processing selected parameters including said
        instantaneous flow rate to provide a reference indicia
        corresponding to an average flow rate of said breathing
        gas; and
    utilizing at least one of said instantaneous flow rate and
        said reference indicia to select one of said higher and
        said lower pressure magnitudes for said supply flow of
        breathing gas.

41

Claim 53:

A method of treating sleep apnea syndrome comprising the steps
of:
     providing a flow of breathing gas from a source for
       delivery to the airway of a patient at selected higher
       and lower pressure magnitudes at least as great as
       ambient atmospheric pressure;
     permitting said flow of breathing gas to pass from such a
       patient;
     monitoring said flow of breathing gas to detect an
       instantaneous flow rate of said breathing gas;
     processing selected parameters including said
       instantaneous flow rate to provide a reference indicia;
       and
     utilizing at least one of said instantaneous flow rate and
       said reference indicia to select one of said higher and
       said lower pressure magnitudes for said supply flow of
       breathing gas.


The '575 Patent:

Claim 21:

A proportional positive airway pressure apparatus for
delivering pressurized breathing gas to an airway of a patient,
said apparatus comprising:
     a gas flow generator;
     a patient interface adapted to couple said gas flow
       generator to an airway of a patient;
     a sensor adapted to detect at least one physiological
       condition of such a patient, wherein said physiological
       condition is suitable for use to differentiate between
       an expiratory phase and an inspiratory phase of a
       breathing cycle of such a patient and to output a signal
       indicative thereof;
     a pressure controller associated with at least one of said
       gas flow generator and said patient interface to control
       a pressure of said breathing gas provided by said gas
       flow generator;
     control means for controlling said pressure controller so
       as to cause said breathing gas to be delivered to such a
       patient at a first pressure level during at least a
       portion of said inspiratory phase of said breathing
       cycle and in accordance with a predetermined pressure
       profile during said expiratory phase of said breathing

42

cycle, wherein a shape of said predetermined pressure
profile is set independent of any monitored respiratory
characteristics of such a patient.

Claim 23:

A method of providing pressured breathing gas to an airway of a
patient, said method comprising the steps of:
    supplying gas to an airway of such a patient from a source
    of gas via a patient interface;
    determining a fluid characteristic associated with a flow
    of gas within said patient interface and outputting a
    fluid characteristic signal indicative thereof;
    establishing a first gain to be applied to said fluid
    characteristic signal; and
    controlling said supply of gas to such a patient during at
    least a portion of a breathing cycle based on said fluid
    characteristic signal and said first gain so as to
    deliver said gas to such a patient at a minimally
    sufficient pressure to perform at least one of the
    following functions at any given moment during at least
    a portion of a breathing cycle:
    (1) reduce cardiac preload and afterload, wherein said
    minimally sufficient pressure needed to reduce cardiac
    preload and afterload in an absence of respiratory
    loading and a pressure needed to overcome an impact of
    respiratory loading on cardiac preload and afterload;
    and
    (2) prevent airway collapse, wherein said minimally
    sufficient pressure is a summation of a pressure needed
    to prevent airway collapse and pressure needed to
    overcome respiratory effort.


Claim 43:

A method of delivering pressurized breathing gas to an airway
of a patient, said method comprising the steps of:
    providing a gas flow generator and a patient interface
    adapted to couple said gas flow generator to an airway
    of a patient;
    detecting at least one physiological condition of such a
    patient, wherein said physiological condition is
    suitable for use to differentiate between an expiratory
    phase and an inspiratory phase of a breathing cycle of
    such a patient and outputting signals indicative
    thereof; and

43

controlling said gas flow to such a patient at a first
pressure level during at least a portion of said
inspiratory phase and in accordance with a predetermined
pressure profile during said expiratory phase of said
breathing cycle, wherein a shape of said predetermined
pressure profile is set independent of any monitored
respiratory characteristics of such a patient.

Claim 44:

The method of claim 43, further comprising a step of
setting at least one of a magnitude and a duration of said
pressure profile.


The '517 Patent:

Claim 29:

A method of delivering pressurized breathing gas to an airway
of a patient, comprising:
    generating a flow of breathing gas;
    sensing a fluid characteristic associated with the flow of
      breathing gas and outputting a signal corresponding to
      the fluid characteristic;
    selecting an expiratory gain; and
    controlling a pressure of the flow of breathing gas
      delivered to a patient based on a product of the
      expiratory gain and the fluid characteristic during at
      least a portion of an expiratory phase of such a
      patient's breathing cycle, so that a pressure of the
      flow of breathing gas delivered to the patient during at
      least a portion of the expiratory phase varies with
      fluctuations of the fluid characteristic.


Claim 30:

The method claim 29, wherein generating the flow of breathing
gas includes carrying the flow of breathing gas to an airway of
a patient via conduit, and wherein controlling the pressure of
the flow of breathing gas includes exhausting gas from the
conduit.

Claim 32:

The method claim 29, wherein controlling a pressure of the flow of breathing gas delivered to a patient based includes controlling the pressure of the flow of breathing gas based on:

(1) an inspiratory positive airway pressure (IPAP) during an inspiratory phase of such a patient's breathing cycle, and

(2) based on the product of the expiratory gain and the fluid characteristic during at least a portion of an expiratory phase of such a patient's breathing cycle, so that a pressure of the flow of breathing gas delivered to such a patient during at least a portion of the expiratory phase varies with fluctuations of the fluid characteristic.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RESPIRONICS, INC. and RIC          )
INVESTMENTS, INC.                  )
        Plaintiffs,                )
                                   )
    v.                             )    Civil Action No.  04-0336
                                   )
INVACARE CORP.                     )
        Defendant.                 )

## ORDER

AND NOW, this 26 day of April, 2007, defendant's motion
for summary judgment of non-infringement of the '802, '193, and
'575 Patents [doc. no. 253] is GRANTED.  Defendant's motion for
summary judgment of non-infringement of the '517 Patent is
DENIED as to literal infringement, but GRANTED as to
infringement under the doctrine of equivalents.  Plaintiffs'
motion for summary judgment of infringement [doc. no. 254] is
DENIED.

    Plaintiffs' motion for summary judgment on patent validity
[doc. no. 255] is GRANTED.

                              BY THE COURT,


                              _____, J.

cc:  All Counsel of Record

46