IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RESPIRONICS, INC. and RIC )
INVESTMENTS, INC. )
    Plaintiff, )
)
v. ) Civil Action No. 04-0336
)
INVACARE CORP. )
    Defendant. )

MEMORANDUM and ORDER

Gary L. Lancaster,                                         January 7, 2008
District Judge

    This is an action in patent infringement. Respironics, Inc. and RIC Investments, Inc. ("Respironics") have accused Invacare of infringing four of their patents. We entered summary judgment of non-infringement as to three of the patents, and a jury returned a verdict of infringement as to the remaining patent. Respironics has filed a motion for a permanent injunction. [doc. no. 312]. For the reasons that follow, the motion will be denied.

I.     BACKGROUND

    A.     Procedural History

    Respironics holds numerous patents in the field of sleep therapy. Respironics accused Invacare of infringing several of these patents, namely, the '802 Patent, the '193 Patent, the '575 Patent, and the '517 Patent. Respironics contended that

Invacare infringed the first three patents by selling its currently commercialized device and the final patent by displaying a prototype device at the 2003 Medtrade trade show. [doc. no. 162, pp. 5-6 ("Defendant's use of that device at the Medtrade show in 2003 constitutes infringement, separate and apart from the continuing infringement of the '802, the '193, and the '575 Patents")]. Respironics never alleged that the commercialized device infringed the '517 Patent. [id., p. 5 ("Respironics' technical expert Dr. Younes, stated in his Rule 26(a)(2)(B) report that the accused device does not *currently* infringe [the '517 Patent]" (emphasis in original)).

On cross motions for summary judgment the court found that Invacare's commercialized device did not infringe the first three patents. However, the court identified one key factual dispute that precluded the entry of summary judgment as to infringement of the '517 Patent by the trade show device. The jury was asked to resolve that factual dispute by answering one question: Does the $V_{scale}$ variable in the Unloading Equation convert valve position information into flow rate units? On November 8, 2007, the jury answered that question yes, in Respironics's favor. Six weeks after the jury returned its verdict, Respironics filed its motion for a permanent injunction.

B. The Parties' Positions

Respironics claims that it is entitled to a permanent injunction enjoining Invacare from using, making, or selling any Polaris EX CPAP with SoftX device, including the commercialized device. According to Respironics, it is entitled to this relief because, "...for more than four years, Invacare has continued to market its SoftX device as performing the same function as the infringing trade show device, *i.e.*, as performing exhalation unloading." [doc. no. 313, p. 4]. Therefore, Respironics argues, "[p]otential customers are misled into believing that Invacare's SoftX device provides Respironics' patented exhalation unloading technology." [id.].

Invacare contends that Respironics is not entitled to a permanent injunction for several reasons. Primarily, Invacare contends that although the jury resolved the factual dispute in favor of Respironics, the jury did not find that Invacare infringed the '517 Patent. According to Invacare, it has consistently maintained that there are other limitations in the asserted claims of the '517 Patent that are not found in the trade show device.

II.  LEGAL STANDARD

Recently, the Supreme Court rejected the Court of Appeals for the Federal Circuit's "general rule" that permanent injunctive relief should be automatically granted in patent cases upon a finding of infringement. eBay Inc. v. MercExchange, L.L.C., ___ U.S. ___, 126 S.Ct. 1837 (2006). Instead, the Supreme Court reiterated that a district court must determine, in accordance with traditional equitable considerations, whether permanent injunctive relief is appropriate based on the particular facts and circumstances of the case before it. Id. at 1839-41. In doing so, a district court must not categorically grant, nor categorically deny, injunctive relief in patent cases. Id.

Instead, the Supreme Court directed district courts to apply the well-established four-factor test to requests for injunctive relief in patent cases. Id. at 1839. Under that test, in order to obtain injunctive relief a patentee must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that

the public interest would not be disserved by a permanent injunction. Id.

III. DISCUSSION

    A. Scope and Context of the November Trial

Both parties have raised issues regarding the scope of the trial and the meaning of the jury's verdict. Therefore, before addressing the substance of Respironics's motion for a permanent injunction, we must clarify the circumstances surrounding the jury trial.

        1. The Jury Trial was Limited to Consideration of the Trade Show Device

The scope of the trial, and the jury's verdict, was very limited. The jury found that a prototype device displayed at a trade show more than four years ago, but never sold at that time, or at any time thereafter, infringed the '517 Patent. The jury did not consider whether the prototype device infringed any of Respironics's other patents, or whether Invacare's currently commercialized device infringed the '517 Patent, or any other patent, or whether Invacare engaged in false advertising or unfair competition in regard to its commercialized device.

Nevertheless, in its motion for permanent injunctive relief, Respironics claims that it is entitled to an injunction against Invacare's sale of any device that uses the Unloading Equation, including the currently commercialized device. Respironics also contends that it is entitled to an order preventing Invacare from claiming that its currently commercialized device performs an exhalation unloading function. The jury's verdict that the trade show device infringed the '517 Patent entitles Respironics to neither form of relief.

### 2. The Jury Trial Resulted in a Finding That Invacare Infringed the '517 Patent

Invacare contends that while the jury's verdict resolved a discrete factual dispute, the jury did not find that Invacare infringed the '517 Patent. According to Invacare, because it has always preserved its right to argue that the trade show device did not contain other limitations found in the asserted claims of the '517 Patent, it now has a second chance to defend itself against Respironics's infringement allegations. Invacare's position is supported by neither the facts, nor the law.

We find that Invacare did not preserve any specific argument regarding the absence of other claim limitations under the circumstances of this case. Invacare contends that it consistently informed the court of its other claim limitations arguments. However, the only document that specifically sets forth any such argument is Invacare's Non-Infringement Contentions, filed in January of 2006 in accordance with this court's Local Patent Rules.

Both parties moved for summary judgment as to infringement of the '517 Patent. In their papers, both parties focused on the flow rate claim limitation. In our summary judgment opinion, we identified the flow rate conversion issue as the only one precluding the entry of judgment as to infringement of the '517 Patent. Invacare made no objection, or other response, when the court identified that limitation as the sole issue to be tried to a jury in its April 2007 summary judgment opinion, or its July 2007 reconsideration opinion.

Invacare did not advance any other non-infringement argument, or inform the court that there were other factual issues to be submitted to a jury at an August 2007 status conference at which the court discussed pre-trial proceedings and scheduling. In fact, at that conference, both parties agreed that the only way to finalize the validity and

7

infringement case for purposes of appeal was for a jury to resolve the flow rate conversion factual dispute. The only disagreement between the parties at the conference was whether damages discovery and a damages trial would be required before the parties could appeal the claim construction, validity, and infringement rulings to the Court of Appeals for the Federal Circuit.

Invacare filed no <u>motion in limine</u> indicating that there were additional factual issues that would have to be submitted to the jury in order to finalize the issue of infringement of the '517 Patent prior to appeal. In addition, contrary to Invacare's position, its proposed jury instructions and verdict form do not indicate that any other specific claim elements of the '517 Patent were in dispute. [doc. no. 316-14, p. 4 (proposed jury instruction states general rule that every single limitation of a claim must be present in an accused device in order to infringe, then specifically discusses the only element in dispute in this case - flow rate)]; [doc. no. 316-15, p. 3 (proposed verdict includes a footnoted reference to the requirement that valve position information be measured on an expiratory breath, but makes no reference to this fact being in dispute, or requiring the jury's consideration)].

8

Rather, the first time that Invacare informed the court of its allegedly preserved arguments was at the pre-trial conference in October. The court held this conference nearly six months after it had defined the single factual issue precluding the entry of summary judgement as to infringement of the '517 Patent, six weeks after the August status conference at which the parties discussed finalization of the infringement case for appeal purposes, and three weeks before trial was scheduled to begin. However, even then, Invacare failed to identify any particular claim limitations that were missing in the trade show device.

Subsequently, in post-verdict filings, and at a January 3, 2008 status conference, Invacare again referred generally to its right to assert that other, as of yet still unidentified, claim limitations were missing in the trade show device. According to Invacare, because of these allegedly preserved arguments, the infringement case is not over.

Based on the facts, we do not find that Invacare has preserved any additional non-infringement arguments. To the contrary, given the timing and generality of Invacare's claims, and its prior agreement that the November trial would finalize the infringement case for purposes of appeal, we consider Invacare's position to be nothing more than litigation

gamesmanship.

If Invacare had other evidence supporting its contention that the trade show device did not infringe the '517 Patent it would have presented it in the summary judgment context. It defies logic, and professional standards, that Invacare truly believed that it had other defenses to infringement, but failed to raise them in opposition to a motion for summary judgment of infringement, or during a jury trial on the question of infringement of the patent.

Regardless, under the circumstances, we find that Invacare had a duty to present all of its evidence of non-infringement at the summary judgment stage. In finding that a party waived its right to present evidence and arguments that it had failed to make in opposition to a motion for summary judgment, the Court of Appeals for the Federal Circuit recognized that "there is no 'onus on the district court to distill any possible argument which could be made based on the materials before the court. Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court.'" Pandrol USA, LP v. Airboss Ry. Products, Inc., 320 F.3d 1354, 1366 (Fed. Cir. 2003)(citing Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990)); see also

Garmin Ltd. v. TomTom, Inc., 468 F.Supp.2d 988, 1000-01 (W.D. Wis. 2006) ("A party opposing summary judgment must show his whole hand; it may not simply tell a court that other reasons for denying the motion are lurking somewhere in the record.") (citing cases). Although Invacare may not have been compelled to affirmatively move for summary judgment on all of its non-infringement arguments, when faced with Respironics's motion for summary judgment of infringement,[1] it had the obligation to present all of its evidence in opposition. By failing to do so, we find that Invacare waived those arguments. Pandrol, 320 F.3d at 1366-67.

Even if Invacare did not have an affirmative duty to present such evidence at the summary judgment stage, at the very least, Invacare had a duty of candor to the court and opposing counsel to specifically and formally indicate that the factual issue identified as the only one bearing on the question of infringement of the '517 Patent was not actually

---

[1] We acknowledge that Respironics's motion for summary judgment of infringement is not the model of clarity or completeness. The motion and the brief give short shrift to the '517 Patent. However, Respironics moved for entry of judgment as to infringement of all asserted claims of each of the Patents in Suit, included a copy of the '517 Patent with its papers, and provided some argument regarding the '517 Patent's claims. The motion is fairly read as seeking a judgment of infringement as to the '517 Patent.

the only non-infringement issue in dispute. To, instead, make one general reference to the matter immediately prior to trial, allow a nearly week long trial to be completed without mentioning it again, and then, six weeks after the jury verdict, notify the court that additional briefing, or a second trial, is needed, is an abuse of the judicial process.

We find that the jury verdict resulted in a finding that Invacare infringed the '517 Patent when it displayed the prototype device at the 2003 Medtrade trade show.

### B. Application of the Four-Factor Test

Having addressed the scope of the jury trial and verdict, we now consider the merits of Respironics's motion for a permanent injunction. Because all factors weigh against granting the requested relief, the motion will be denied.

#### 1. Irreparable Injury

Respironics contends that it will suffer irreparable injury to its statutory right to exclude and to its reputation as an innovator in the absence of a permanent injunction. Under the facts of this case, we find that neither concern warrants the equitable relief that Respironics requests.

First, Respironics's statutory right to exclude others is

not implicated by the jury's verdict. The jury found that the 2003 trade show device infringed the '517 Patent. Respironics itself has acknowledged that the trade show device was displayed for a short time at the trade show, was never offered for sale, and is not currently being made, offered for sale, or sold by Invacare. A device that all parties agree has not existed for more than four years has no bearing on Respironics's right to exclude infringers from the marketplace, now or in the future.

Furthermore, Respironics never accused Invacare's commercialized device of infringing the '517 Patent. The jury did not consider whether Invacare's currently commercialized device infringed the '517 Patent. Therefore, Respironics has no right to exclude Invacare from selling its currently commercialized device. Such injunctive relief would go far beyond the scope of the jury's verdict - that the trade show device infringed the '517 Patent.

Second, there is no real danger to Respironics's reputation as an innovator in the field of sleep therapy. As Respironics itself points out, the vast majority of Invacare's sales is in its traditional product lines, such as wheelchairs, walkers and oxygen. Only a "small fraction" of Invacare's sales come from "its recent foray into sleep products." [doc.

no. 313, p. 8]. On the other hand, Respironics consistently describes itself as the leader in the field of sleep therapy. The status of Respironics as the industry leader was not disputed in this case. Under these facts, we do not find a new entrant in the market, with what Respironics itself describes as a side business in the field of sleep therapy, to be a serious threat to the industry leader's reputation for innovation.

Because there is no risk of irreparable injury to Respironics, this factor weighs against granting permanent injunctive relief.

2. Adequate Remedy at Law

Respironics contends that it is entitled to permanent injunctive relief because monetary damages are not an adequate remedy against future infringement. According to Respironics, monetary damages are "generally considered inadequate in patent cases." However, following the eBay decision, we must consider this factor more carefully. After doing so, we find that monetary damages are adequate in this case.

There is no risk of future infringement. The jury found that the trade show device infringed the '517 Patent. All parties agree that the trade show device was pulled from

14

production and destroyed in 2003. A device that no longer exists, and has been replaced by a different, currently commercialized model, cannot inflict future harm. Rather, the only damages in this case will be of a historical nature, based on Invacare's display of the prototype device at the 2003 Medtrade trade show. Invacare's 2003 infringement is not causing current harm to Respironics, nor will it cause future harm.

Because Respironics has an adequate remedy at law to compensate it for any injury caused by Invacare's display of the prototype device at a 2003 trade show, this factor weighs against granting permanent injunctive relief.

### 3. Balance of Hardships

Respironics claims that the balance of hardship weighs in its favor because Invacare is a very large company and Respironics is a small company. Also, Respironics argues that it will suffer hardships, such as loss of customers, price erosion, and encroachment of patent rights in the absence of a permanent injunction.

As an initial matter, given recent media reports of a more than $5 billion dollar purchase of Respironics by a Dutch company, the "David and Goliath" argument rings hollow. The

15

allegedly divergent size of the parties does not justify permanent injunctive relief in this case.

The additional hardships claimed by Respironics, such as price erosion and lost customers do not support injunctive relief for at least two reasons. First, these harms are not being caused by Invacare's display of a prototype device in 2003. These harms, to the extent that they exist, are being caused by Invacare's current competition in the sleep therapy market, with the different, commercialized device. As we have reiterated several times already, the jury trial and verdict did not involve the commercialized device. Second, even if such harms were relevant, we would consider them to be compensable with monetary damages.

Therefore, Respironics has not shown that the balance of hardships weighs in its favor. This factor weighs against granting permanent injunctive relief.

### 4. Public Interest

Respironics alleges that the public interest favors an injunction because enforcement of patent rights encourages invention. Furthermore, Respironics claims that the requested permanent injunction is needed to protect the public from being deceived into thinking that Invacare's currently commercialized

device performs exhalation unloading.

As an initial matter, Respironics never made any allegations in its pleadings, or otherwise, regarding how Invacare was marketing its current device. As such, protecting the public from deceptive advertising is simply not a consideration in this case.

Second, although it is true that the protection of patent rights generally fosters innovation, that, in itself, is insufficient to justify permanent injunctive relief. As the Supreme Court has cautioned us, we must consider the facts of each patent case on its own merits, and not grant permanent injunctive relief based on broad principles, and generalities, of patent law. Here, where the device found to be infringing is no longer on the market, has never been on the market, and was last displayed more than four years ago, general statements regarding innovation do not support entry of a permanent injunction.

Therefore, Respironics has not shown that the public interest weighs in its favor. This factor also weighs against granting permanent injunctive relief.

## IV. CONCLUSION

In conclusion, each of the four factors weigh against granting Respironics the permanent injunction that it has requested. For the foregoing reasons, Respironics's motion for a permanent injunction is denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RESPIRONICS, INC. and RIC INVESTMENTS, INC.<br>    Plaintiff,<br><br>v.<br><br>INVACARE CORP.<br>    Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 04-0336<br>)<br>)<br>) |

ORDER

Therefore, this **7th** day of January, 2008, IT IS HEREBY ORDERED that plaintiffs' motion for a permanent injunction [doc. no. 312] is DENIED.

BY THE COURT:

_____, J.

cc: All Counsel of Record