IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RESPIRONICS, INC. and RIC      )
INVESTMENTS, INC.              )
            Plaintiff,         )
                               )
      v.                       )    Civil Action No.  04-0336
                               )
INVACARE CORP.                 )
            Defendant.         )

## MEMORANDUM

Gary L. Lancaster,                          June**21**, 2010
Chief Judge

      This is a patent infringement case. The parties appealed both this court's entry of partial summary judgment [doc. no. 267] and a jury's verdict of infringement [doc. no. 310]. The Court of Appeals for the Federal Circuit remanded the case [doc. no. 343]. In accordance with the appellate court's mandate, and pursuant to this court's September 18, 2009 order [doc. no. 378], the parties have now filed renewed cross-motions for summary judgment on the issues of infringement and validity [doc. nos. 383, 386].

      For the reasons that follow, we enter judgment as a matter of law that Invacare's Commercial Device does not infringe the '575 Patent and that the '575 Patent and the '517 Patent are not anticipated by the Younes Article.

      A detailed summary of the factual, technical, and procedural background of this case, as well as the applicable legal standards, can be found in prior opinions of this court, and the Court of Appeals for the Federal Circuit. [doc. nos. 249, 267, 343].

## I.  Infringement

Respironics contends that Invacare's Commercial Device infringes claims 21, 43, and 44 of the '575 Patent.  We previously entered summary judgment that Invacare's Commercial Device did not infringe the asserted claims. [doc. no. 267 at p. 19].  However, the Court of Appeals for the Federal Circuit vacated that ruling on the ground that we had erred in construing the term shape to mean magnitude and duration. [doc. no. 343 at p. 26].

According to the appellate court, the shape of a pressure profile "is a different characteristic reflective of the way the pressure changes over time, independent of the particular magnitude and duration of the profile." [doc. no. 343 at p. 10].  In other words, "...a pressure profile is defined by its duration, magnitude, and shape.  These three characteristics - duration, magnitude, and shape - are interrelated, but are different factors in the overall makeup of the pressure profile." [Id. at p. 11 (emphasis in original)].  As such, the court of appeals construed the term "shape" to mean "contour along which the pressure changes over time, describing the way in which the profile drops off to arrive at the minimum pressure and then rises back up to arrive back at the maximum pressure, independent of the exact values of magnitude and duration." [Id. at p. 12].

2

Based on this modified claim construction, we have again considered whether Invacare's Commercial Device infringes claims 21, 43, and/or 44 of the '575 Patent. We find, as a matter of law, that it does not. Each of the asserted claims of the '575 Patent require: (1) that the magnitude, duration, and shape of the pressure profile be predetermined; and (2) that the shape of the pressure profile be set independent of any monitored respiratory characteristics of the patient. Because there is no dispute that the magnitude of the pressure profile supplied by Invacare's Commercial Device is not predetermined, but rather varies on a breath to breath basis, no reasonable jury could find that the Commercial Device infringes the '575 Patent.

A. The Meaning of Predetermined

Our first step in reaching this conclusion on the infringement issue is to determine the meaning of predetermined. Neither this court, nor the appellate court, has construed the term predetermined in the context of the '575 Patent. However upon consideration of the intrinsic record, and the court of appeals's opinion, we find that there is no dispute that the term predetermined means chosen in advance.

Under this court's prior claim construction, the distinction between the terms predetermined and set was not relevant because the magnitude and the duration (i.e., shape) of the pressure

profile had to be both predetermined and set independent of any
monitored respiratory characteristic. However, under the appellate
court's modified construction of the term shape, the distinction
between predetermined and set has become central to the infringement
analysis. Now all three characteristics of the pressure profile,
i.e., magnitude, duration, and shape, must be predetermined, while
only the shape must be set independent of any monitored respiratory
characteristic. Dependent claim 44 adds to these requirements the
additional step of setting the magnitude or duration.

As a starting point, we know that the term predetermined
cannot mean the same thing as the term set. In arriving at its
modified claim construction, the court of appeals sought to
eliminate a claim differentiation problem caused by this court's
prior claim construction. Specifically, the court of appeals stated
that "...because parent claims 21 and 43 recite that the profile's
'shape' is set independent of any monitored respiratory
characteristics of a patient, the further setting of the profile's
'magnitude' and/or 'duration' in claims 22 and 44 would be redundant
if 'shape' meant 'magnitude and duration' as construed by the
district court." [doc. no. 343 at p. 10]. We would create a similar
problem were we to construe the term predetermined to mean the same
thing as the term set. In other words, if predetermined meant the
same thing as set the further setting of the profile's magnitude
and/or duration in claims 22 and 44 would be redundant because those

4

two characteristics would have already been set in claims 21 and 43.

Apart from identifying the general claim differentiation problem, the court of appeals's opinion also specifically addresses the meaning of the term predetermined in the context of the Early Patents. [doc. no. 343 at pp. 7-8]. In reviewing this court's claim construction of the phrase "at selected higher and lower pressure magnitudes" the court equated the term "preselected" to the term "predetermined," and then distinguished both from something that "can somehow be changed breath by breath." [doc. no. 343 at p. 7]. The court concluded that we had correctly construed the disputed phrase to "require the pressure magnitudes to be <u>chosen prior to</u> operation of the computer circuitry that is used to determine whether the patient is inhaling or exhaling." [<u>Id</u>. at p. 8 (emphasis added)]. The court of appeals also used the term predetermined in this manner when summarizing Respironics's argument that the Commercial Device infringed the Early Patents because the "ΔV variable in the Unloading Equation is given a predetermined value in Standby Mode, which is then used to preselect the lower pressure magnitude." [<u>Id</u>. at p. 9]. Therefore, the court of appeals consistently used the term predetermined to describe a value that is chosen in advance.

We now turn to the language of the '575 Patent itself. The term predetermined is used several times throughout the specification and claims of the '575 Patent in conjunction with

5

words other than pressure profile. For instance, the patent refers to controlling the output pressure "for a predetermined initial segment of inspiration" (col. 13, lns. 61-63); to providing a pressure profile "during a predetermined portion of a respiratory cycle" (cls. 10, 32); to an alarm being activated when an "automatically determined gain fall[s] outside a predetermined range of values" (col. 18, lns. 56-68; see also cls. 17, 39); to preventing the "automatically determined gain from exceeding predetermined limits" (col. 18, lns. 61-62); to limits on the amount of the gain "vary[ing] over a predetermined period of time" (col. 18, lns. 65-66); and to "changing more than a predetermined amount over the predetermined period of time" (col. 19, lns. 3-4; cls. 20, 42). These varied uses confirm that the term predetermined is used in the '575 Patent to refer to a value that is chosen in advance. This is exactly the way that the term predetermined was defined by the court of appeals in its analysis of the Early Patents. [doc. no. 343 at pp. 7-8 (interpreting pressure magnitudes to be preselected and predetermined, and thus requiring that they be chosen prior to operation)].

It is also the same way that the term predetermined is used in conjunction with the phrase pressure profile in the '575 Patent; i.e., to refer to something that is chosen in advance. The predetermined pressure profile invention in the '575 Patent is described as a simplified version of the invention. See col. 6, ln.

6

61 to col. 7, ln. 17; col. 8, lns. 42-43; col. 20, ln. 16 to col. 21, ln. 18. This version of Proportional Positive Airway Pressure (PPAP) therapy is simplified because it does not adjust the pressure profile based on the patient's instantaneous breathing. See col. 20, ln. 66 to col. 21, ln. 5; col. 6, ln. 61 to col. 7, ln. 17. Instead, the simplified version uses a pressure profile that is chosen in advance. This simplified version is described as being more "cost effective" because it replaces the "reactive component used to generate the reduced pressure curve during exhalation...with a defined reduced pressure profile." See col. 20, lns. 16-20. As a result, a less accurate sensor can be used because this version "does not control the flow and/or pressure provided to the patient based on the flow or pressure signal from the patient... but instead, merely detects the start or [sic] expiration and/or inspiration." See col. 20, ln. 66 to col. 21, ln. 5.

Finally, this meaning of the term predetermined is in accordance with how the term is contrasted to other terms in the '575 Patent. For instance, the '575 Patent distinguishes the term predetermined from something that is automatically determined. The latter provides for the device to resolve some uncertainty before assigning a final value by using calculations made during operation. By contrast, the former must be chosen in advance, before operation. See, col. 18, ln. 56 to col. 19, ln. 4; cls. 17, 19, 20, 39 and 41).

As such, all indicators point to the term predetermined

being used in the '575 Patent to refer to something that is chosen

in advance. Using this definition of the term predetermined, no

reasonable jury could find that Invacare's Commercial Device

infringes the '575 Patent. The facts necessary to reach this

conclusion were not in dispute when we entered summary judgment in

Invacare's favor on this issue in 2007, and are not in dispute now.

This is true even though the court of appeals vacated our grant of

summary judgment on this infringement issue and remanded for re-

consideration under its modified construction of the term shape.


B.    Infringement Analysis

Each of the asserted claims of the '575 Patent require

that the magnitude, duration, and shape of the pressure profile be

chosen in advance. The Unload Pressure provided by Invacare's

Commercial Device has a predetermined shape, i.e., the bathtub. The

Unload Pressure provided by Invacare's Commercial Device has a

predetermined duration, i.e., the sum of the chosen 40 msec., 300-

400 msec., and 400 msec. intervals. However, the Unload Pressure

provided by Invacare's Commercial Device does not have a

predetermined magnitude. The magnitude of the expiratory pressure

profile in the Commercial Device is not chosen in advance. Instead,

it varies breath to breath.    Here, the distinction between

predetermined and automatically determined discussed above becomes

central to the infringement analysis. While the magnitude of the Unload Pressure is automatically determined by the Unloading Equation during operation of Invacare's Commercial Device, it is not predetermined because it varies on a breath by breath basis. We reached this same dispositive conclusion regarding the varying nature of the magnitude of the Unload Pressure in our prior summary judgment opinion. The court of appeals's opinion specifically affirms this conclusion. As such, no reasonable jury could find that any asserted claim of the '575 Patent is infringed by Invacare's Commercial Device.

We found in our prior summary judgment opinion that "there can be no genuine dispute that the magnitude of the second pressure delivered by the accused device is based on the patient's previous breath." [doc. no. 267 at p. 20]. We explained further that "[t]he second pressure magnitude applied by the accused device can, and does, change on a breath by breath basis, and as a direct result of a patient's prior breathing patterns." [Id. at p. 15]. And we demonstrated that the pressure changes on a breath by breath basis by reviewing each of the variables in the Unloading Equation and the data collected by Mr. Mascara during testing of Invacare's Commercial Device. [Id. at pp. 15-17]. The Court of Appeals for the Federal Circuit agreed both with our finding that the record contained no genuine issues of material fact regarding these findings and with our ultimate conclusion that the Unload Pressure

changes based on the patient's breathing patterns. [doc. no. 343 at pp. 8-10]. Because the magnitude of the pressure profile applied by Invacare's Commercial Device is not predetermined, the Commercial Device does not meet each limitation of the asserted claims. As such, it cannot infringe the '575 Patent as a matter of law.

Based on this finding, we need not address each of Invacare's alternative arguments as to why its Commercial Device does not infringe the '575 Patent. However, we note briefly that we reject each of Invacare's arguments that the bathtub shape is not infringing because it has straight lines, because it does not immediately rise back up, because it does not constantly change over time, and because it is not an off-center U. None of these limitations or requirements are found in the text of the patent, in any claim construction, or in any previous rulings or opinions from this court or the court of appeals.

Similarly, although not necessary to our ruling, we also reject Invacare's argument that its Commercial Device does not infringe the '575 Patent because it does not reduce the constant pressure of CPAP or the reduced pressure of bi-level therapy upon the detection of expiration. [doc. no. 343 at p. 15; doc. no. 249 at p. 27; doc. no. 267 at p. 34]. Although the court of appeals found this to be a disputed fact, it did so based on a limited record filed in an improper cross-appeal. [doc. no. 343 at p. 15; doc. no. 378 at p. 11]. However, upon review of the entire record,

this court's prior summary judgment opinion, and the court of appeals's opinion, there can be no dispute that the second pressure provided by Invacare's Commercial Device reduces the original, or prescribed, pressure.

In our first summary judgment opinion we stated that Mr. Mascara's declaration proved "...that the second pressure was always lower than the prescribed CPAP pressure." [doc. no. 267 at p. 17]. We also considered the Unloading Equation, and its variables, in detail. [doc. no. 267 at pp. 14-16]. That equation subtracts a value from $P_{set}$, or the prescribed pressure, in order to arrive at a second pressure, called the Unload Pressure. As a matter of basic mathematics, the second pressure must be less than the first pressure. The court of appeals did not vacate, reverse, or express any disagreement with either of those findings. Rather, it agreed that the Unloading Equation was used to arrive at the second pressure and said nothing to overturn, or draw into question, our findings regarding the Mascara data. [doc. no. 343 at pp. 8-10]. We conclude that there is no genuine dispute of material fact that Invacare's Commercial Device provides a second pressure magnitude that is less than, or reduces, the first, or prescribed, pressure.[1]

For the foregoing reasons, we find that no reasonable jury

---

[1]    This court, and the court of appeals, have already rejected Invacare's contention that the Commercial Device cannot infringe because it provides only a "minimal drop in pressure" [doc. no. 387 at pp. 23-24; doc. no. 343 at p. 15; doc. no. 267 at pp. 17-18.

could conclude that Invacare's Commercial Device infringes claims 21, 43, or 44 of the '575 Patent. Therefore, we enter judgment as a matter of law in Invacare's favor on this issue.

## II. Invalidity

Invacare contends that claims 21, 43, and 44 of the '575 Patent, and claims 29, 30, and 32 of the '517 Patent are invalid as anticipated by the Younes Article. We previously granted Respironics's motion for summary judgment, finding that the Patents were valid over the Younes Article. [doc. no. 267 at pp. 33-38]. We did so on the ground that Invacare had failed to carry its burden to establish that these two issued Patents were invalid over a prior art reference that had been cited and considered by the Patent and Trademark Office during prosecution. [Id.]. The Court of Appeals for the Federal Circuit reversed our grant of summary judgment because we had failed to identify "...any claim limitation that was not disclosed in the Younes Article," and failed to refer to the claim charts submitted by Invacare that "...purport[ed] to match each claim limitation with a specific disclosure in the Younes Article." [doc. no. 343 at pp. 22-23]. While "...tak[ing] no view on the technical merits of Invacare's claim charts..." the appellate court directed us to determine on remand "...whether Invacare has shown the existence of a genuine issue of material fact." [Id. at

12

p. 23].[2]

The court of appeals did not discuss, or even acknowledge, that this court had based its prior ruling on Invacare's failure to produce a sufficient quantum of proof to defeat Respironics's properly supported motion for summary judgment. We cannot speculate as to the reason for this failure. Nevertheless, the law is clear that Invacare will be held to a twice heightened burden of proof at trial in attempting to prove that the Younes Article anticipates the '517 and '575 Patents. Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 447 (Fed. Cir. 1986). As such, we must apply that higher burden in considering the validity issue on summary judgment. Regardless, as discussed below, the burden of proof does not effect the court's ultimate ruling on this issue.

### A.    The Validity of Claim 44 Will Be Considered

As an initial matter, we confirm that we will substantively consider Invacare's argument that claim 44 of the '575 Patent is anticipated by the Younes Article.[3]    Respironics is

---

[2]    The court of appeals also invited Respironics to "more clearly set[] forth whatever patentable differences it believes exist over the Younes Article." [doc. no. 343 at pp. 23-24; see also doc. no. 378 at pp. 6-7].

[3]    This question is somewhat academic given that Respironics itself has now sought entry of summary judgment that claim 44 of the '575 Patent is not anticipated by the Younes Article. [doc. no. 384 at p. 17].

correct that the court of appeals did not include claim 44 in its order reversing our order granting Respironics summary judgment on the issue of validity, and remanding the case. [doc. no. 343 at p. 26]. However, the court of appeals could not have included claim 44 in its mandate because Respironics did not move for entry of summary judgment that claim 44 was not anticipated by the Younes Article during the first round of summary judgment motions decided by this court. [doc. no. 255]. As such, we cannot decide whether it is proper to consider claim 44 during this round of summary judgment motions by referring to the court of appeals's opinion and order. Instead, we must review the procedural history of this case before this court.

Respironics did not identify claim 44 as being infringed by Invacare's Commercial Device until after expert discovery had closed. [doc. no. 175 at p. 4]. In denying Invacare's motion in limine to preclude Respironics from asserting that the Commercial Device infringed claim 44 of the '575 Patent at trial, we excused the delay because claim 44 was a "dependent claim with little difference from claim 43." [Id.]. As such, we found that there was no prejudice in allowing Respironics to include claim 44 among the asserted claims because Respironics's infringement case did not substantively change by adding claim 44 to the list of asserted claims. Similarly, Invacare's invalidity case has not substantively changed by adding claim 44 to the list of claims allegedly

14

anticipated by the Younes Article. The only thing that has changed due to the court of appeals's opinion, is the claim number to which particular invalidity arguments apply. As such, there is no prejudice to Respironics in considering the validity of claim 44 over the Younes Article in the context of these cross-motions for summary judgment.[4]

## B.    Invalidity Analysis

We now turn to the substance of the cross-motions for summary judgment, which ask whether claims 21, 43, and 44 of the '575 Patent, and claims 29, 30, and 32 of the '517 Patent are invalid as anticipated by the Younes Article. We find that they are not.

Respironics originally identified three distinctions between the Younes Article and the Patents: (1) the article did not address the treatment of a specific condition; (2) the article discloses a generic apparatus that uses a piston as the gas delivery source; and (3) the apparatus disclosed in the article has no means to detect and compensate for leaks. [doc. no. 343 at pp. 22-23].

---

[4]    By contrast, allowing Invacare to now argue that the '575 and '517 Patents are obvious in light of the Younes Article does alter the substance of its invalidity case. Therefore, we will not entertain Invacare's obviousness arguments. We likewise will not consider Invacare's argument that the '575 Patent is invalid as failing to meet the written description requirement of section 112 because it only discloses off-center U shaped profiles.

15

However, the court of appeals found that these three distinctions were "of no consequence" and "misse[d] the mark" because "none of the cited distinctions is reflected in the claims of the patents." [Id. at p. 23 (emphasis in original)]. Although this would appear to have required entry of judgment in Invacare's favor on the anticipation issue at the appellate level, instead, the appellate court invited Respironics, on remand, to "...move again for summary judgment more clearly setting forth whatever patentable differences it believes exist over the Younes Article." [Id. at p. 24]. Respironics has now done so.

In accordance with the court of appeals's invitation for Respironics to supplement its validity arguments and evidence, we reopened expert discovery in order to allow the parties a full and fair opportunity to explore any and all possible distinctions between the apparatus disclosed in the Younes Article and the inventions claimed in the '575 and '517 Patents. Respironics has identified four claim elements from the '575 Patent and four claim elements from the '517 Patent that are allegedly missing from the Younes Article. Invacare contends that each of these allegedly missing elements is disclosed in the Younes Article.

In summary, we find that the court of appeals's opinion dictates that none of the eight allegedly missing claim elements identified by Respironics are a sufficient basis on which to distinguish the Younes Article from the asserted claims of the

Patents. However, this is not dispositive of the validity issue because Invacare concedes that the Younes Article does not disclose all of the claimed elements and limitations arranged or combined in the same way as recited in the claims of the Patents. [doc. no. 394 at p. 23]. As such, under recent controlling precedent from the Court of Appeals for the Federal Circuit, there is no legal basis on which a reasonable jury could conclude that the Younes Article anticipates the '517 Patent or the '575 Patent. Therasense, Inc. v. Becton, Dickinson and Company, 593 F.3d 1325 (Fed. Cir. 2010). Thus, we will enter judgement as a matter of law that neither the '517 Patent nor the '575 Patent is anticipated by the Younes Article.

### 1. The Eight Missing Elements

#### (a) The '575 Patent

Respironics has identified four elements of the '575 Patent claims that are missing from the Younes Article. They are: (1) "predetermined pressure profile"; (2) "shape of the predetermined pressure profile"; (3) "airway of the patient"; and (4) "patient interface". Each of these distinctions does no more than identify terminology from the field of sleep apnea treatment that is missing from the Younes Article. However, the court of appeals has already rejected treatment of a particular condition as a basis on which to distinguish the claims of the '575 Patent from

17

the Younes Article [doc. no. 343 at p. 23 ("the first distinction is of no consequence because the claims...are not limited to the treatment of any particular condition or disease state.")].

More specifically, Respironics's arguments regarding the first and second allegedly missing elements are that the exact phrase "predetermined pressure profile" does not appear in the Younes Article, nor do the terms CPAP and EPAP, and that the device disclosed in the Younes Article was never actually used to reduce CPAP or EPAP pressure. The last point is legally irrelevant. The first two are nothing more than a re-characterization of Respironics's original argument that because the Younes Article does not speak specifically to the treatment of sleep apnea, and therefore use sleep apnea terminology, there can be no anticipation. The court of appeals has already rejected that as a basis for distinguishing the Younes Article from the '575 Patent. Similarly, the third and fourth allegedly missing elements again speak only to the absence of particular sleep apnea treatment terminology from the Younes Article. The court of appeals has already stated that this absence is "of no consequence."

Therefore, no reasonable jury, regardless of the burden of proof, could find that these four elements distinguish the claims of the '575 Patent from the Younes Article.

## (b)  The '517 Patent

Respironics has identified four claim elements from the '517 Patent that are missing from the Younes Article. They are: (1) "patient flow rate"/leakage; (2) the controlling step; (3) "airway of the patient"; and (4) "IPAP". Again, the court of appeals has already rejected each of these elements as a basis on which to distinguish the claims of the '517 Patent from the Younes Article. As such, as with the '575 Patent, under no burden of proof, whether heightened or not, could these four elements distinguish the claims of the '517 Patent from the Younes Article.

The first two distinctions identified by Respironics rely on the proposition that the claims of the '517 Patent require leakage to be detected and accounted for. The court of appeals has already held, however, that "leakage detection is not recited in the claims." [doc. no. 343 at p. 23]. Contrary to Respironics's argument, this court's claim construction opinion does not, and in the current procedural posture cannot, contradict the appellate court's clear holding that leak detection is not required by the claims. As such, the first two distinctions are without legal consequence.

The airway of the patient and the IPAP distinctions do no more than identify sleep apnea specific terminology missing from the Younes Article. As we discussed in the context of the '575 Patent above, however, the court of appeals has already rejected treatment

19

of a particular condition as a basis on which to distinguish these
patents from the Younes Article. [doc. no. 343 at p. 23 ("the first
distinction is of no consequence because the claims...are not
limited to the treatment of any particular condition or disease
state.")].

Therefore, no reasonable jury, regardless of the burden
of proof, could find that these four elements distinguish the claims
of the '517 Patent from the Younes Article.

### 2.    Arrangement

Respironics finally argues that its Patents are not
anticipated by the Younes Article because one would have to "pick
and choose" from the disclosures in the Younes Article in order to
arrive at the inventions disclosed in the '575 and '517 Patents.
According to Invacare, the Younes Article is still anticipatory
because its circuitry could have been arranged and/or was capable
of being arranged in the same manner as in the '575 and '517
Patents. [doc. no. 394 at pp. 23, 26, 29].

However, the Court of Appeals for the Federal Circuit has
recently rejected the exact standard that Invacare relies upon.  In
Therasense, Inc. v. Becton, Dickinson and Company, the court of
appeals found that a jury instruction was "incorrect" because it
made "sufficient, for purposes of anticipation, a prior art
disclosure of individual claim elements that 'could have been

20

arranged' in a way that is not itself described or depicted in the anticipatory reference." Therasense, Inc. v. Becton, Dickinson and Company, 593 F.3d 1325, 1332 (Fed. Cir. 2010). The court of appeals reiterated its long-standing rule that "unless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations *arranged or combined in the same way as recited in the claim*, it cannot be said to prove prior invention of the thing claimed and, thus cannot anticipate." Id. (citing Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008) (emphasis in original)).

Invacare does not even contend that the disclosures in the Younes Article are arranged or combined in the same way as in any claim of either Patent. Rather, Invacare contends that the ability to arrange or combine the elements in the same way is a sufficient basis on which to find a reference to be anticipatory. The Court of Appeals for the Federal Circuit has recently reiterated that Invacare's position is wrong. On this basis alone we find that no reasonable jury, under any possibly applicable burden of proof, could conclude that the Younes Article anticipates either the '575 Patent or the '517 Patent.

## III. Conclusion

For the forgoing reasons we will enter judgment, as a matter of law, that Invacare's Commercial Device does not infringe claims 21, 43, or 44 of the '575 Patent and that the Younes Article does not anticipate claims 21, 43, or 44 of the '575 Patent or claims 29, 30, or 32 of the '517 Patent.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RESPIRONICS, INC. and RIC )
INVESTMENTS, INC. )
   Plaintiff, )
      )
 v. )   Civil Action No. 04-0336
      )
INVACARE CORP. )
   Defendant. )

ORDER

AND NOW, this 21st day of June, 2010, IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment [doc. no. 383] is GRANTED, in part, and DENIED, in part. Judgment as a matter of law shall be entered that claims 21, 43, and 44 of the '575 Patent and claims 29, 30, and 32 of the '517 Patent are not anticipated by the Younes Article.

IT IS FURTHER ORDERED that defendant's motion for summary judgment [doc. no. 386] is GRANTED, in part, and DENIED, in part. Judgment as a matter of law shall be entered that Invacare's Commercial Device does not infringe claims 21, 43, or 44 of the '575 Patent.

BY THE COURT,

_[signature]_

cc: All Counsel of Record